Mark D. Rutter – State Bar No. 058194
David G. Torres-Siegrist – State Bar No. 220187
CARPENTER, ROTHANS & DUMONT
888 S. Figueroa Street, Suite 1960
Los Angeles, CA 90017
Telephone: (213) 228-0400
Facsimile: (213) 228-0401
mrutter@crdlaw.com/dgts@crdlaw.com

**Attorneys for Defendants**
**COUNTY OF LOS ANGELES; KENNETH FELIX; TIMOTHY LOPEZ; NICHOLAS CABRERA; and DOES 1 through 10, inclusive**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LUNA, an individual<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; KENNETH FELIX; TIMOTHY LOPEZ; NICHOLAS CABRERA; and DOES 1 through 10, inclusive.<br><br>Defendants. | Case No. CV 07-04715 SJO (JCx)<br><br>**DEFENDANTS' TRIAL BRIEF**<br><br>Trial: October 1, 2008<br><br>**U.S. District Court Judge**<br>**Honorable James S. Otero** |

COMES NOW Defendants, Attorneys for Defendants COUNTY OF LOS ANGELES; KENNETH FELIX; TIMOTHY LOPEZ; NICHOLAS CABRERA and pursuant to U.S.D.C. Local Rule 16-10 submit the following Trial Brief.

DATED: September 24, 2008

CARPENTER, ROTHANS & DUMONT

By: _____
MARK D. RUTTER
DAVID G. TORRES-SIEGRIST
Attorneys for Defendants

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. ABSENT A MONELL CLAIM, THERE CAN BE NO LIABILITY VIA 42 U.S.C. § 1983 AS TO THE COUNTY OF LOS ANGELES AND THEREFORE THE COUNTY SHOULD BE DISMISSED AS A DEFENDANT.

As reflected in the September 15, 2008 Proposed Pretrial Conference Order the parties have entered into a stipulation dismissing any and all <u>Monell</u> claims as to the COUNTY OF LOS ANGELES. <u>See</u> Proposed Pretrial Conference Order Dated September 15, 2008 [*Docket Number?*]

In <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658 (1978), the U.S. Supreme Court specifically stated, "the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." <u>Id.</u> at 663; <u>McMillian v. Monroe County</u>, 520 U.S. 781, (1997); <u>Guillory v. County of Orange</u>, 731 F.2d 1379, 1381 (9th Cir. 1984). Therefore, regardless of whether defendant peace officers violated plaintiff's civil rights, Defendant COUNTY OF LOS ANGELES cannot be subjected to vicarious liability pursuant to 42 U.S.C. § 1983.

A local government may only be held liable under § 1983, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Id</u> at 694.

The U.S. Supreme Court has explained:

> "[M]unicipal liability under § 1983 attaches where -- and only where -- deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483-84, 106 S.Ct. 1292 (1986) [Emphasis Added]. <u>See</u>

also City of St. Louis v. Proprotnik, 485 U.S. 112, 108 S.Ct. 915 (1988).

As the Ninth Circuit reiterated with regard to Monell in Meehan v. City of Culver City, 856 F.2d 102 (9th Cir. 1988):

> "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional [local government] policy, which policy can be attributed to a [local government] policymaker." Id. at 107.

It is therefore, respectfully submitted that there is no legal basis for plaintiff to persist against Defendant COUNTY OF LOS ANGELES with respect to the instant lawsuit.

## II. CONSPIRACY TO COMMIT PERJURY IS SUBJECT TO ABSOLUTE IMMUNITY AGAINST § 1983 SUITS IN THE CONTEXT OF CRIMINAL COURT TESTIMONY AND NON-TESTIMONIAL CONDUCT INEXTRICABLY INTERTWINED WITH TESTIMONY.

Plaintiff's 42 U.S.C. § 1983 Claim based on a theory of fabrication of evidence is fatally defective as it encompasses defendants' previous testimony in the underlying criminal matter, as well as non-testimonial conduct inextricably intertwined with said testimony. The testimony of defendants at issue is simply a recitation of the facts and circumstances outlined in the reports prepared by the officers which forms the thrust of plaintiffs fabrication claim. It is respectfully submitted that a conspiracy to commit perjury and perjury itself is subject to

absolute immunity against 42 U.S.C. § 1983 suits, as is non-testimonial conduct inextricably intertwined with in-court testimony.

In Paine v. City of Lompoc, 265 F.3d 975 (9th Cir. Cal. 2001) a plaintiff was arrested and charged with resisting arrest and battery on a police officer. After the charges were dropped, plaintiff filed the underlying § 1983 suit alleging excessive force during the arrest. After a jury verdict for defendants and an unsuccessful appeal, plaintiff sued alleging that the police officers conspired to suppress and fabricate evidence about another officer's role in the arrest. Defendants appealed the denial of their motion for summary judgment, alleging that plaintiff failed to state a cognizable § 1983 claim for a cover up and that they were entitled to absolute immunity from liability because of their roles as witnesses in the earlier lawsuit. The Ninth Circuit court of appeals reversed the denial of defendants' summary judgment motion because the district court's generalizations that the evidence supported going forward to trial against the two officers did not hold up on close examination of the record. There was no evidence in the record demonstrating the officers' participation in an out-of-court conspiracy to suppress evidence.

The Paine court explained:

> "Witnesses, including police witnesses, are accorded absolute immunity from liability for their testimony in judicial proceedings. The purpose of such immunity is to encourage witnesses to come forward and speak freely in court by relieving the potential defendant of any fear that he will later have the burden of litigating the propriety of his conduct as a witness. (citations omitted) Denying that immunity on summary judgment compromises the reasons for the protection accorded court appearances, by subjecting the defendant to the rigors and distractions of

standing trial even if he or she is ultimately found not liable on testimonial immunity grounds." Id. at 980-981.

In Franklin v. Terr, 201 F.3d 1098 (9th Cir. Cal. 2000) plaintiff filed a complaint under 42 U.S.C.S. § 1983 against witnesses who had testified against him in a murder trial. Plaintiff alleged that defendants conspired with other people to use perjured testimony to convict him of a murder his daughter committed 20 years earlier. The Ninth Circuit specifically held that defendants had absolute immunity from civil damages under 42 U.S.C.S. § 1983 because of the policy of protecting testifying witnesses from harassment.

The Ninth Circuit specifically stated:

> "In the instant case, Franklin is attempting to circumvent Terr's absolute witness immunity by alleging that Terr conspired with others to present false testimony. **We are persuaded that allowing a plaintiff to circumvent the Briscoe rule by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983. Absolute witness immunity is based on the policy of protecting the judicial process and is 'necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'** (citations omitted). As the Court stated in Briscoe, 'witness's apprehension of subsequent damages liability might induce two forms of self censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of

subsequent liability.' (citations omitted). Moreover, as the district court correctly observed, 'any other holding would eviscerate absolute immunity since a witness rarely prepares her testimony on her own.'" [Emphasis Added] <u>Id.</u> 1101-1102. See also <u>Briscoe v. LaHue</u>, 460 U.S. 325, 326 (1983).

It is respectfully submitted, to the extent that plaintiff's fabrication claim is based on allegations that defendants conspired to commit perjury, committed perjury and/or falsified the reports they testified to at trial, such is subject to absolute immunity against 42 U.S.C. § 1983 suits.

### III. PLAINTIFF'S ARREST FOR BATTERY IS ADMISSIBLE FOR IMPEACHMENT PURPOSES AND IS RELEVANT ON THE ISSUE OF DAMAGES.

In his deposition of April 29, 2008 plaintiff was specifically questioned regarding prior arrests.

"Q: Any other instances where you were arrested?

A: No.

Q: Okay. So you have been arrested twice, it's our incident and picked up for not paying a traffic ticket?

A: Yes." <u>See</u> Plaintiff's Deposition: *Pg. 27, Line 23 through Pg. 28, Line 5.*

It has been recently discovered by defense counsel that plaintiff was arrested and Convicted for a violation of <u>Penal Code</u> § 242 Battery on April 1, 1987. <u>See</u> Criminal Court Docket Sheet for <u>People v. Michael Luna</u> bearing L.A.C.S.C. Case Number 87M02257.

It is respectfully submitted that plaintiff's arrest and subsequent conviction

for battery should be made admissible for impeachment purposes and is independently relevant with respect to issues pertaining to damages.

### A. USE OF PLAINTIFF'S ARREST SHOULD BE MADE ADMISSIBLE FOR IMPEACHMENT PURPOSES.

Federal Rules of Evidence 404 (b) provides:

> "**[Evidence] may, however, be admissible for other purposes,** such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."     [Emphasis added.] Id.

While the list above is <u>illustrative</u>, it is NOT <u>exclusive</u> of the "other purposes" for which this type of evidence may be admitted.

In <u>United States v. Bufalino</u>, 683 F.2d 639, (2d Cir. 1982) the court specifically stated:

> "[E]vidence of 'other crimes' is, however, permissible for purposes of impeachment" Id. at 647; See also United States v. Benedetto, 571 F.2d 1246, 1250 (2d Cir. 1978)

Moreover, Rule 609 does not apply when convictions are used as evidence of some specific basis for impeachment. Thus, convictions need not comply with Rule 609 to be admissible to show a witness's bias, prejudice, or ulterior motive. See eg. Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (explaining difference between revealing conviction on cross-examination to allow jury to infer that witness might be untruthful and revealing conviction to

demonstrate witness's bias, prejudice, or ulterior motive); see also United States v. Greschner, 802 F.2d 373, 383 (10th Cir. 1986), *cert. denied,* 480 U.S. 908 (1987) (evidence was intended to show bias, not impeach credibility).

    Similarly, Rule 609 does not govern the admissibility of convictions used to contradict a witness's testimony. See U.S. v. Castillo, 181 F.3d 1129 (9th Cir. 1999) (defendant's "expansive and unequivocal" denial, on direct examination, of involvement with drugs warranted admission of extrinsic evidence of defendant's prior cocaine arrest as impeachment by contradiction).

    Thus, prior convictions that might not otherwise be admissible may be admitted if the witness's testimony "opens the door" to the evidence. See Bender v. Brumley, 1 F.3d 271, 276 (5th Cir. 1993) (when defendant denied prior murder on direct examination, he opened door to government's introduction of prior murder conviction, and it was unnecessary for court to balance factors under Fed. R. Evid. 609(a)(1) ).

    It would be patently unfair for plaintiff to be able to testify that other than the instant case and a warrant for not paying traffic tickets, plaintiff had never been arrested when in fact he had been previously arrested for battery and convicted of said offense.

### B. PLAINTIFF'S PRIOR ARREST AND CONVICTION FOR BATTERY ARE RELEVANT ON THE ISSUE OF DAMAGES.

    Clearly, evidence of plaintiff's prior arrest is relevant in testing the source(s) of depression and is appropriate material for cross-examination of the psychologist.

    The psychologist's Rule 26 report further commented upon plaintiff's time following the subject incident at the Los Angeles County jail and his feeling "very uncomfortable waiting with other inmates."

1  It is anticipated that plaintiff's claim of emotional distress will encompass
2  his time suffering in jail following the subject incident.
3  "[T]he fact of prior imprisonment is a consideration to the extent of mental
4  suffering occasioned by the wrongful confinement." *Bryan v. Jones,* 519 F.2d 44,
5  46 (5th Cir. 1975)
6  Surely, a jury could infer that due to one's time previously in jail, the
7  degree of distress from a second time in jail is less likely to provoke such a degree
8  of distress that would have been suffered by a first timer.
9  Another judge of this district court has agreed that prior confinement is
10 relevant on the issue of damages stating:

> "Defendant argues that plaintiff's prior convictions and incarcerations
> are relevant to the extent plaintiff seeks to recover damages for
> emotional distress, citing *Bryan v. Jones,* 519 F.2d 44 (5th Cir.1975),
> *Ford v. Wells,* 347 F.Supp. 1026 (E.D.Tenn.1972), and *Alamo Downs
> v. Briggs,* 106 S.W.2d 733 (Tex.Civ.App.1937). In *Bryan,* the Fifth
> Circuit held in a section 1983 action for false imprisonment that a
> plaintiff's prior incarceration was relevant to the extent he claimed
> damages for mental suffering occasioned by wrongful confinement.
> *Bryan, supra,* 519 F.2d at 46. *Ford* and *Alamo Downs* similarly suggest
> that a person who has previously been incarcerated may suffer less
> damage as a result of a subsequent wrongful incarceration. See *Ford,
> supra,* 347 F.Supp. at 1030 (""Mr. Ford appears to have been arrested
> for public drunkenness and related crimes some 21 times before this
> episode; he was not as damaged by being unlawfully arrested and
> imprisoned as another person with an unblemished record might have
> been""); *Alamo Downs, supra,* 106 S.W.2d at 738 (""The appellee,
> having alleged that by reason of the assault and battery and false arrest
> and imprisonment he suffered great mental anguish, pain, and

humiliation, and having testified to such, if he had been in jail for breaches of the peace, we think the fact would be pertinent to go before the jury for their consideration as to the amount of damages allowed in this action""").

The cases cited by defendant are consistent with Rule 404(a), which allows the use of character evidence for purposes other than proving acts in conformity therewith. None of the cases cited by defendant, however, addresses the issue of prejudice, which Rule 404 requires. See Fed.R.Evid. 404(a), Advisory Committee Notes. Although defendant has submitted an offer of proof regarding plaintiff's criminal history, he has not identified which convictions and incarcerations he intends to offer into evidence. Having reviewed plaintiff's criminal history, the court agrees that the fact that plaintiff has been incarcerated on a number of prior occasions, and the length of those periods of incarceration, is relevant to the jury's consideration of the damages he is entitled to recover in this case. See *Peraza v. Delameter,* 722 F.2d 1455, 1457 (9th Cir.1984) (holding that in a §§ 1983 action for excessive force, the trial court did not abuse its discretion when it admitted evidence of plaintiff's subsequent encounters with the police and difficulties in school as relevant to plaintiff's claim that he suffered injury to """ ''head, body and psyche'' """ as a result of the arrest); see also *Knudsen v. Welsh,* 872 F.2d 428, 1989 WL 30470, (9th Cir.1989) (Upub.Disp.) (holding that in a §§ 1983 action for illegal detention, trial court did not abuse it discretion in admitting evidence of defendant's prior arrests, police contacts and periods of incarceration, with a limiting instruction that such evidence was only relevant insofar as it beared on the issue of damages for emotional distress). The nature of the convictions that led to the earlier incarcerations, however, is not

relevant to damages, however, and would have a prejudicial impact that would outweigh any probative value that exists. Accordingly, as respects the issue of damages for emotional distress, defendant may introduce evidence of the number and duration of plaintiff's prior periods of incarceration. Plaintiff's contention that such evidence will be unduly prejudicial can be properly addressed by giving an appropriate limiting instruction to the jury. *Green v. Baca,* 226 F.R.D. 624, 656-657 (C.D.Cal. 2005) *reversed on other grounds on rehearing,* 530 F.2d 1210 (1976) (damages issue unaffected by holding on rehearing)."

Besides use as impeachment evidence, it is respectfully submitted that plaintiff's prior arrest in 1987 for battery is relevant on the issues of damages.

Respectfully submitted:

DATED: September 24, 2008          CARPENTER, ROTHANS & DUMONT

By: _____
MARK D. RUTTER
DAVID G. TORRES-SIEGRIST
Attorneys for Defendants

## DECLARATION OF DAVID G. TORRES SIEGRIST

I, David G. Torres Siegrist, declare that:

1. I am an attorney at law, duly licensed to practice before all of the courts including the Central District of the U.S. District Court, and I am the senior associate in the law firm of Carpenter, Rothans & Dumont, attorneys of record for Defendants COUNTY OF LOS ANGELES, KENNETH FELIX; TIMOTHY LOPEZ; NICHOLAS CABRERA.

2. The following facts are stated from my personal knowledge, except those facts stated on information and belief which I believe to be true, and if called as a witness, I could and would so competently testify thereto under oath.

3. This declaration is made in support of the defendants' Trial Brief.

4. Attached hereto as "Exhibit A" are true and correct copies of relevant portions of Plaintiff MICHAEL LUNA's deposition of April 29, 2008.

5. Attached hereto as "Exhibit B" are true and correct copies of the Docket Sheet for People v. Michael Luna bearing L.A.C.S.C. Case Number 87M02257.

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States on September 24, 2008, at Los Angeles, California.

David G. Torres Siegrist - Declarant

# EXHIBIT A

# Condensed Transcript of **Michael Luna**

**Date:** April 29, 2008

**Case:** Luna v. Los Angeles

Carroll Sells Court Reporting Service
Phone: 562.799.9100
Fax: 562.799.9104
Email: CCarrollSells@aol.com

# EXHIBIT B

**Page 26**

1   A. No.
2   Q. -- between you and whoever was out there?
3   A. No.
4   Q. Have you had any encounters with any of the
5   Sheriff's deputies or sergeant that was involved in this
6   particular incident since the incident?
7   A. No.
8   Q. Had you ever had any encounters with Deputies
9   Lopez, Felix or Sergeant Cabrera before the date of this
10  incident?
11  A. I do not believe so.
12  Q. Had you had any encounters with the Sheriff's
13  Department before the date of this incident?
14  A. Again, by the Sheriff's Department, probably other
15  than a traffic stop.
16  Q. Okay. Any -- any problems with the Sheriff's
17  Department in any respect before the date of this incident?
18  A. No.
19  Q. Any problems with any other law enforcement agency
20  where you felt that you weren't treated properly before the
21  date of this incident?
22  A. Not properly, you know, other than them talking
23  the way they talk to you, but, you know, it's just more
24  verbal then. . . .
25  Q. Do you have any friends or acquaintances who are

**Page 27**

1   in law enforcement?
2   A. Yes.
3   Q. Who is that?
4   A. I have a friend that I went to high school with,
5   he's in the Los Angeles County S.W.A.T. team, and his
6   father is also the sergeant of the L.A. ports.
7   Q. Sergeant of the L.A. ports?
8   A. Ports, yes.
9   Q. Okay. So they are Sheriff's Department employees?
10  A. Correct.
11  Q. Okay. What are -- what's this fellow who you went
12  to school with, what's his name?
13  A. His name is Daniel Alaman.
14  Q. Can you spell the last name for me?
15  A. A-l-m-a-n I think, Alaman, or A-l-a.
16  Q. Apart from the arrest which occurred on July 31,
17  2005, have you ever been arrested?
18  A. Other than traffic for tickets, for not paying
19  some tickets.
20  Q. Picked up on a warrant for not paying the ticket?
21  A. Yes.
22  Q. When was that?
23  A. It must have been -- it's a long time ago.
24  Probably right after high school or something.
25  Q. Any other instances where you were arrested?

**Page 28**

1   A. No.
2   Q. Okay. So you have been arrested twice, it's our
3   incident and picked up on a bench warrant for not paying a
4   traffic ticket?
5   A. Yes.
6   Q. Have you ever had a restraining order of any type
7   issued against you?
8   MR. HARRIS: I'll object on relevance and privacy
9   grounds.
10  But you can answer.
11  THE WITNESS: Yes. I believe so.
12  BY MR. RUTTER:
13  Q. What was -- what was that about?
14  A. It was an old high school girlfriend who had a kid
15  and while supposedly it was my kid, but it turned out not
16  to be, and she always harassed me and harassed me and so
17  that was. . . .
18  Q. She obtained a restraining order against you?
19  A. Yes.
20  Q. And when was this?
21  A. I believe, again, it was, you know, out of high
22  school at some point, maybe --
23  Q. In the '80s?
24  A. I believe so, yes.
25  Q. What was her name?

**Page 29**

1   A. Her name was Mona Gomez.
2   Q. Mona?
3   A. Mona Gomez.
4   Q. And was that out of the Whittier court?
5   A. Yes.
6   Q. Any other restraining orders?
7   MR. HARRIS: Same objections.
8   But you can answer.
9   THE WITNESS: No. I'm not sure at this time. I'm not
10  sure.
11  BY MR. RUTTER:
12  Q. When you say you are not sure, is -- was there
13  some event that occurred that you believe may involve --
14  A. Well, I -- well, that -- well, that, I had that
15  problem with, you know, again my old girlfriend, you know,
16  kid that wasn't mine, so a lot of stuff happened between
17  that time. And then also I also have another child,
18  another ex-girlfriend that I had, you know, family stuff
19  going on so. . . .
20  Q. Okay. And in connection with this other
21  girlfriend, ex-girlfriend, was there a stay away order,
22  restraining order or any other type of order?
23  A. I'm not sure if it was a restraining, but I know
24  we were, you know, we were doing some custody battles in
25  court.

```
                                                    D 07
            IN THE MUNICIPAL COURT OF WHITTIER JUDICIAL DISTRICT,
                 COUNTY OF LOS ANGELES, STATE OF CALIFORNIA
                                              PAGE NO.    1
NO. 87M02257                        VS.       * CURRENT DATE 04/28/94
THE PEOPLE OF THE STATE OF CALIFORNIA
DEFENDANT 01:  MICHAEL LAWRENCE LUNA
               3409 SANDOVAL AVE
               PICO RIVERA, CA 90660
               DOB 06/17/68   OLN      VLN
LAW ENFORCEMENT AGENCY EFFECTING ARREST:  1900

BAIL: APPEARANCE  AMOUNT    DATE    RECEIPT OR   SURETY COMPANY   REGISTER
      DATE        OF BAIL   POSTED  BOND NO.                      NUMBER

CASE FILED ON 05/20/87.
 COMPLAINT FILED, DECLARED OR SWORN TO CHARGING DEFENDANT WITH HAVING
 COMMITTED, ON OR ABOUT 04/01/87 IN THE COUNTY OF LOS ANGELES, THE FOLLOWING
OFFENSE(S) OF:
   COUNT 01: 242 PC MISD - BATTERY.
NEXT SCHEDULED EVENT:
   06/05/87    900 AM   ARRAIGNMENT    DIST WHITTIER   DIV 001


ON 06/05/87 AT  900 AM  IN WHITTIER DIV 007

   CASE CALLED FOR ARRAIGNMENT
PARTIES: ABNER M. FRITZ (JUDGE)   ARTHUR HEBERT  (CLERK)
         NONE         (REP)  NONE   ()
DEFENDANT NOT PRESENT, AND WAS NOT REPRESENTED BY COUNSEL
   BENCH WARRANT ORDERED 1000.00
NEXT SCHEDULED EVENT:
BENCH/WARRANT TO ISSUE

06/07/87 ARREST WARRANT IN THE AMOUNT OF $1,000.00 BY ORDER OF JUDGE ABNER M.
    FRITZ ISSUED.

06/09/87 ARREST WARRANT IN THE AMOUNT OF $1,000.00 BY ORDER OF JUDGE ABNER M.
    FRITZ RECALLED.

06/09/87 ARREST WARRANT IN THE AMOUNT OF $1,000.00 BY ORDER OF JUDGE ALFONSO D.
    HERMO ISSUED.


ON 06/15/87 AT  900 AM  IN WHITTIER DIV 001

   CASE CALLED FOR BENCH WARRANT HEARING
PARTIES: ABNER M. FRITZ (JUDGE)   ARTHUR HEBERT  (CLERK)
         NONE         (REP)  NONE   ()
DEFENDANT PRESENT, AND WAS NOT REPRESENTED BY COUNSEL
DEFENDANT RELEASED ON OWN RECOGNIZANCE
   P.D. APPOINTED.
NEXT SCHEDULED EVENT:
   07/13/87    130 PM   PRETRIAL HEARING    DIST WHITTIER   DIV 004

06/15/87 ARREST WARRANT IN THE AMOUNT OF $1,000.00 BY ORDER OF JUDGE ALFONSO D.
    HERMO RECALLED.


ON 07/13/87 AT  130 PM  IN WHITTIER DIV 006

AS TO COUNT  (01):




                                                    E 07
DEFENDANT PLACED ON SUMMARY PROBATION
   FOR A PERIOD OF 025 MONTHS UNDER THE FOLLOWING TERMS AND CONDITIONS:
COUNT (01): DISPOSITION: PLEAD GUILTY
DMV ABSTRACT NOT REQUIRED.
NEXT SCHEDULED EVENT:
   09/14/87    130 PM   FINE PAYMENT(S)    DIST WHITTIER   DIV CLK


ON 09/16/87 AT  130 PM  IN WHITTIER DIV CLK

   CASE CALLED FOR FINE PAYMENT(S)
PARTIES: NONE (JUDGE)   NONE  (CLERK)
         NONE         (REP)  NONE   ()
DEFENDANT PRESENT, AND WAS NOT REPRESENTED BY COUNSEL
   FINE PAID $250.00 $175.00 CASH
   PAYMENT IN THE AMOUNT OF $           PAID ON          , RECEIPT # A0170.
   BALANCE DUE $              FINE AMOUNT $   425.
```

ON 06/15/87 AT 900 AM IN WHITTIER DIV 001

```
CASE CALLED FOR BENCH WARRANT HEARING
PARTIES: ABNER M. FRITZ (JUDGE)  ARTHUR HEBERT  (CLERK)
         NONE         (REP) NONE   ()
DEFENDANT PRESENT, AND WAS NOT REPRESENTED BY COUNSEL
DEFENDANT RELEASED ON OWN RECOGNIZANCE
 P.D. APPOINTED.
NEXT SCHEDULED EVENT:
  07/13/87   130 PM  PRETRIAL HEARING    DIST WHITTIER  DIV 004

06/15/87 ARREST WARRANT IN THE AMOUNT OF $1,000.00 BY ORDER OF JUDGE ALFONSO D.
    HERMO RECALLED.
```

ON 07/13/87 AT 130 PM IN WHITTIER DIV 006

AS TO COUNT (01):

E 07

```
DEFENDANT PLACED ON SUMMARY PROBATION       FOLLOWING TERMS AND CONDITIONS:
  FOR A PERIOD OF 025 MONTHS UNDER THE
COUNT (01): DISPOSITION: PLEAD GUILTY
DMV ABSTRACT NOT REQUIRED.
NEXT SCHEDULED EVENT:
  09/14/87   130 PM  FINE PAYMENT(S)   DIST WHITTIER  DIV CLK
```

ON 09/16/87 AT 130 PM IN WHITTIER DIV CLK

```
 CASE CALLED FOR FINE PAYMENT(S)
PARTIES: NONE (JUDGE)  NONE  (CLERK)
         NONE         (REP) NONE   ()
DEFENDANT PRESENT, AND WAS NOT REPRESENTED BY COUNSEL
 FINE PAID $250.00 $175.00 CASH
 PAYMENT IN THE AMOUNT OF $        PAID ON          , RECEIPT # A0170.
 BALANCE DUE $             FINE AMOUNT $   425.
NEXT SCHEDULED EVENT:
PROCEEDINGS TERMINATED.
```

ON 02/17/88 AT 900 AM IN WHITTIER DIV 006

```
 CASE CALLED FOR POSSIBLE VIOL. OF PROBATION
PARTIES: JUDGE LARRY S. KNUPP (JUDGE)  DOLORES THOMPSON  (CLERK)
         NONE         (REP) NONE   ()
DEFENDANT PRESENT, AND WAS NOT REPRESENTED BY COUNSEL
DEFENDANT RELEASED ON OWN RECOGNIZANCE
 PD APPOINTED
NEXT SCHEDULED EVENT:
  03/14/88   130 PM  POSSIBLE VIOL. OF PROBATION  DIST WHITTIER  DIV 005
```

ON 03/14/88 AT 130 PM IN WHITTIER DIV 002

```
 CASE CALLED FOR SETTING OF VIOLATION HEARING
PARTIES: HERBERT J. ADDEN (JUDGE)  SUSAN MUELLER  (CLERK)
         NONE         (REP) TIA FISHER  (DA)
DEFENDANT PRESENT, AND WAS REPRESENTED BY NONE DEPUTY PUBLIC DEFENDER
NEXT SCHEDULED EVENT:
  04/07/88   900 AM  SETTING OF VIOLATION HEARING  DIST WHITTIER  DIV 002
```

ON 04/13/88 AT 900 AM IN WHITTIER DIV 003

```
 CASE CALLED FOR JURY TRIAL
PARTIES: JAMES A MCKECHNIE (JUDGE)  STAR WILKINSON  (CLERK)
         NONE         (REP) DEAN SHOTWELL  (DA)
DEFENDANT PRESENT, AND WAS REPRESENTED BY BROOKINS DEPUTY PUBLIC DEFENDER
DEFENDANT RELEASED ON OWN RECOGNIZANCE
 CASE TRAILED FROM 04/07/88 DIV3 JUDGE JAMES MCKECHNIE.
 THE COUR FINDS THAT THERE WAS NO VIOLATION OF PROBATION, PROBATIO
N REINSTATED.
NEXT SCHEDULED EVENT:
PROCEEDINGS TERMINATED
```